**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| DANA MALOCH, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 2:09-CV-00094-RWS-SSC |
| | : | |
| v. | : | |
| | : | |
| GARY POLLARD, | : | PRISONER CIVIL RIGHTS |
| GENE HART, | : | 42 U.S.C. § 1983 |
| in his individual capacity, | : | |
| JOE BAREFOOT, | : | |
| in his individual capacity, | : | |
| RICKY CAIN, | : | |
| in his individual capacity, | : | |
| Defendants. | : | |

## ORDER

Now before the Court are the motion to dismiss filed by Defendants Gene Hart and Joe Barefoot [Doc. 91]; the motion for summary judgment filed by Defendants Hart, Barefoot and Ricky Cain [Doc. 95]; the motion for summary judgment filed by Defendant Gary Pollard [Doc. 98]; and the request for ruling filed by Defendants Hart, Barefoot and Cain [Doc. 121]. For the reasons discussed below, the motion for summary judgment filed by Defendants Hart, Barefoot and Cain [Doc. 95] is **GRANTED**; the motion for summary judgment filed by Defendant Pollard [Doc. 98], treated in part as a motion to dismiss, is **DENIED**; and the motion to dismiss [Doc. 91] and request for ruling ]Doc. 121] are **DENIED as moot**.

## I.   Procedural History

On June 19, 2009, Plaintiff Dana Maloch, who is currently incarcerated at Lee Arrendale State Prison ("LASP") in Alto Georgia, filed a complaint through

counsel [Doc. 1] alleging that in July 2008, while she was in the custody of the Georgia Department of Corrections ("GDC"), Defendant Gary Pollard ("Defendant Pollard" or "Pollard"), then Chief of the Banks County Fire Department, sexually assaulted her "while she was detailed to work at the Banks County Fire Department by the [LASP]." (Id. at ¶¶ 1, 2, 6, 7). Plaintiff named Pollard and the "Banks County Board of Commissioners" as Defendants. [Doc. 1]. In Count I of her complaint, Plaintiff asserted a claim against both Defendants pursuant to 42 U.S.C. § 1983 ("§ 1983") for their "intentional acts and deliberate indifference to the safety and serious harm to Plaintiff [which] directly and proximately caused the Plaintiff to be subjected to rape and sexual attack while in custody." (Id. at ¶ 12). In Count II, Plaintiff asserted a "state tort action" against both Defendants based on Defendant Pollard's alleged "rape and sexual attack" of Plaintiff. (Id. at ¶¶ 18-20).

Defendants filed their answers [Docs. 6, 11], and the Banks County Board of Commissioners also filed a motion to dismiss Plaintiff's claims against them [Doc. 15]. In response to that motion to dismiss, Plaintiff filed a motion to amend her complaint to name Banks County, Georgia and the individual members of the Banks County Board of Commissioners, Gene Hart ("Hart"), Joe Barefoot ("Barefoot") and Ricky Cain ("Cain") (collectively referred to as "the Board Members"), as defendants and to add allegations in support of her claim against them. [Doc. 31]. The Court granted the Banks County Board of Commissioners' motion to dismiss; allowed Plaintiff to amend her complaint to name Hart, Barefoot

2

and Cain as defendants and to add factual allegations in support of her claim against them [Doc. 49]; and after a hearing, denied Plaintiff's motion to add Banks County, Georgia as a defendant (<u>see</u> Docs. 54, 55).

On August 26, 2010, Plaintiff filed an amended complaint against Defendants Pollard, Hart, Barefoot and Cain in their individual capacities. [Doc. 56]. In Count I, she asserts a claim against all Defendants pursuant to 42 U.S.C. § 1983. (<u>See</u> <u>id.</u> at ¶¶ 12-17). She alleges that Defendant Pollard "under color of the law . . . raped and sexually attacked the Plaintiff while in custody and caused physical and mental harm to Plaintiff in violation of the Constitution and laws of the United States and the Constitution and laws of the State of Georgia." (<u>Id.</u> at ¶ 13). She further alleges that Defendants Hart, Barefoot and Cain, members of the Banks County Board of Commissioners, were deliberately indifferent "to the pattern and practice of Defendant Pollard abusing women with whom [he] worked previously as well as Defendant Pollard having been discharged from his previous position with the fire department of the City of Baldwin because of sexual harassment of female employees." (<u>Id.</u> at ¶¶ 2, 15). Plaintiff seeks compensatory damages from all four Defendants "for the physical and mental injuries, effects of the rape and sexual attack, pain and suffering, and mental anguish as well as post traumatic stress that she has suffered," and she also seeks punitive and exemplary damages from Pollard. (<u>Id.</u> at ¶¶ 16-17). In Count II, Plaintiff seeks compensatory and punitive and/or exemplary damages from Pollard under the tort law of Georgia

AO 72A
(Rev.8/8
2)

for rape and sexual attack. (Id. at ¶¶ 18-22). Defendants filed their answers to Plaintiff's amended complaint [Docs. 61-64], and discovery proceeded.

On April 15, 2011, Defendants Barefoot and Hart filed the pending motion to dismiss Plaintiff's claims [Doc. 91] pursuant to Federal Rules of Civil Procedure 37(b)(2)(A) and 41(b) for Plaintiff's alleged failure to comply with the Court's March 25, 2011 Order [Doc. 87] directing Plaintiff "to provide full and complete responses to Defendants' discovery requests" and to "pay attorney's fees of $494.[00] to Defendants." (Doc. 91 at 2). Plaintiff filed a response opposing that motion. [Doc. 94].

On May 5, 2011, Defendants Barefoot, Cain and Hart filed their motion for summary judgment, with supporting brief, statement of undisputed material facts and exhibits. [Doc. 95]. The Court granted Plaintiff three extensions of time to respond to Defendants' motion (see Docs. 107-08, 111, 114-16) and advised Plaintiff that the third extension of time would be the last (see Doc. 116). Plaintiff then sought a fourth extension, which the Court denied. (See Docs. 117, 119). Plaintiff has not filed a response to the Board Members' motion for summary judgment. On January 10, 2012, the Board Members filed a "Request for Ruling" [Doc. 121] in which they request that the Court grant their motion for summary judgment as unopposed for the reasons set forth in their motion for summary judgment. Plaintiff has not filed a response to the Board Members' "request."

Defendant Pollard also filed a motion for summary judgment with supporting brief, statement of undisputed material facts and exhibits. [Doc. 98]. Plaintiff filed

4

a response to Defendant Pollards' motion, including supporting brief and exhibits [Doc. 110] and a response to Defendant Pollard's statement of material facts with supporting exhibits [Doc. 109], and Defendant Pollard filed a reply [Doc. 112].

## II.    **Summary Judgment Standards and Procedures**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also SEC v. Morgan Keegan & Co., No. 1:09-cv-1965-WSD, 2011 U.S. Dist. LEXIS 71481, at *13 (N.D. Ga. June 28, 2011) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact." (citing Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999))).  If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, he must respond by going beyond the pleadings, and by his own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine

AO 72A
(Rev.8/8
2)

issue for trial.  See Celotex, 477 U.S. at 322, 324.  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' "  AFL-CIO v. City of Miami, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting Celotex, 477 U.S. at 322).

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial."  Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991), cert. denied, 506 U.S. 952 (1992); see also Fed. R. Civ. P. 56(c)(1)(B), (4).  The evidence "cannot consist of conclusory allegations or legal conclusions."  Avirgan, 932 F.2d at 1577.  Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  See Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984).

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter.  Id. at

AO 72A
(Rev.8/8
2)

249, 255.   Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor."   Id. at 255.

## III.   The Board Members' Motion for Summary Judgment [Doc. 95]

### A.   Standards for Determining Facts for Summary Judgment

Local Rule 56.1B.(1) requires a party moving for summary judgment to file with its motion a "concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried," and Local Rule 56.1B.(2)a. requires the non-moving party to file a response to that statement that admits, refutes or objects to each such statement of fact.   Because Plaintiff as the non-moving party failed to respond to the Board Members' statements of material fact, those facts are deemed admitted.   See id.   The failure of a respondent to respond properly to a motion for summary judgment is not dispositive, however.   Rather, the court must satisfy itself that the movant has carried its burden.   As the court explained in United States v. One Piece of Real Property, 363 F.3d 1099 (11th Cir. 2004):

> The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials.   At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

Id. at 1101-02 (citation omitted).   Thus the Court has reviewed the materials cited by Defendants to determine whether they support Defendants' assertions.   The

7

AO 72A
(Rev.8/8
2)

Court has also reviewed other materials in the record, including Plaintiff's deposition and her filings, to determine whether there are genuine issues of material fact to be tried.

## B.   **Discussion**

In her amended complaint, Plaintiff alleges:

> The individual members of the Banks Count[y] Board of Commissioners . . . were expressly warned by meeting with an ad hoc committee of the Banks County Fire Department not to hire Gary Pollard as the Fire Chief of the Banks County Fire Department and further warned . . . of his previous pattern of abusing women with whom he worked in his previous position with the fire department of the City of Baldwin because of sexual harassment of female employees.

(Doc. 56, Am. Compl. ¶ 11).  Plaintiff asserts a claim against the Board Members pursuant to 42 U.S.C. § 1983[1] for their alleged deliberate indifference "to the pattern and practice of Defendant Pollard abusing women with whom [he] worked previously," which "thereby expos[ed] Plaintiff and other similarly situated female inmates detailed to the Banks County Fire Department to substantial risk of sexual abuse by Defendant Pollard and which directly and proximately caused the Plaintiff to be subjected to rape and sexual attack while in custody." (Id. at ¶ 15).

---

[1] Section 1983 of Title 42 of the United States Code provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Defendants denied those allegations (see Doc. 62, Cain Ans. ¶¶ 11, 15; Doc. 63, Barefoot Ans. ¶¶ 11, 15; Doc. 64, Hart Ans. ¶¶ 11, 15), and they now move for summary judgment on Plaintiff's § 1983 claim against them on the ground that Plaintiff has not produced evidence to support her claim (Doc. 95, Defs. Br. at 4-6).

"To impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1313 (11th Cir. 2001), cert. denied, 535 U.S. 1033 (2002). "It is not sufficient under this standard that a municipal actor's inadequate screening of an applicant's record reflects an 'indifference' to the applicant's background." Id. "Rather, a plaintiff must demonstrate that the municipal hiring decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Id.

Citing Griffin, the Board Members contend that to obtain relief against them, Plaintiff must prove that Pollard sexually harassed women during his prior employment with the City of Baldwin and that the Board Members "were warned and/or aware of such conduct and ignored it." (Doc. 95, Defs. Br. at 4). They argue that Plaintiff's allegations against them "consist of nothing more than conjecture, speculation and rumor," and that "there is no evidence in the record to support her contention that . . . Pollard sexually harassed women" during his

AO 72A
(Rev.8/8
2)

previous employment or that the Board Members knew of such harassment.  (Id. at 4-5).  The Court agrees.

Plaintiff admitted in her deposition that she has no personal knowledge to support the allegations made in her amended complaint that Defendants Hart, Barefoot and Cain met with an ad hoc committee of the Banks County Fire Department who warned them not to hire Pollard as the fire chief of the Banks County Fire Department, and she has no personal knowledge that Defendants Hart, Barefoot and Cain were warned about Pollard's alleged pattern of harassing and abusing women.  (Maloch Dep. at 180-82).  In response to Defendants' Interrogatory No. 2 to "identify the dates and locations of all meetings between any and/or all of the members of the Banks County Board of Commissioners and the ad hoc committee, including the identity of all individuals present at said meetings," Plaintiff responded, "Unknown to Plaintiff at this time."  (Ex. B to Doc. 95).  Plaintiff has not responded to the Board Members' motion for summary judgment, and she has not come forward with any evidence to support her allegation that Defendants were deliberately indifferent "to the risk that a violation of a particular constitutional or statutory right" would follow their decision to hire Pollard as Fire Chief.  Griffin, 261 F.3d at 1313.  As the case law cited *supra* demonstrates, summary judgment is warranted when the party against whom judgment is sought "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

AO 72A
(Rev.8/8
2)

burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Plaintiff bears the burden of proof on her claims against the Board Members, and she has failed to identify any evidence to support those claims. Accordingly, the Board Members' motion for summary judgment [Doc. 95] is **GRANTED**, and Plaintiff's § 1983 claim against them is dismissed.[2]

## IV. Defendant Pollard's Motion for Summary Judgment [Doc. 98]

Defendant Pollard argues that he is entitled to summary judgment on Plaintiff's § 1983 claim because it is barred due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), and because he was not acting under color of state law when she was allegedly raped. (<u>See</u> Doc. 98, Def. Br. at 5-6, 13-14). Pollard also contends that the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims. (<u>Id.</u> at 18-19).

### A. Standards for Determining Facts

The facts, for summary judgment purposes only, are derived from Defendant Pollard's statement of undisputed material facts [Doc. 98] (hereinafter "Def. SMF"); Plaintiff's response to Defendant Pollard's statement of material facts [Doc. 109]; as well as the evidence of record, including depositions. The facts are construed in the light most favorable to Plaintiff as the non-movant. <u>See</u> <u>Frederick v. Spring/United Mgmt. Co.</u>, 246 F.3d 1305, 1309 (11th Cir. 2001).

---

[2] Plaintiff has not asserted any other claims against Defendants Hart, Barefoot and Cain.

AO 72A
(Rev.8/8
2)

As required by Local Rule 56.1B.(1), NDGa., Defendant Pollard filed "a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried." (See Doc. 98). Plaintiff filed a response to that statement as required by Local Rule 56.1B.(2)a., but she did not, as required by Local Rule 56.1B.(2)b., file "[a] statement of additional facts which the respondent contends are material and present a genuine issue for trial" and which "meet the requirements set out in [Local Rule] 56.1B.(1)." Instead, Plaintiff set forth several factual allegations in the "Operative Facts" section of her brief and cited generally to Plaintiff's witness statement (Ex. A to Doc. 110) and to her deposition. (See Doc. 110, Pl. Br. at 1-3). To the extent that Plaintiff intended the "Operative Facts" section to serve as her statement of additional facts, her presentation does not satisfy the requirements of Local Rule 56.1B. because her factual assertions are not set out separately, they are unnumbered, and none of her factual assertions is supported by citation to the "page or paragraph number" of evidence that supports the fact. See LR 56.1B.(1), (2)(b), NDGa. Furthermore, the Court is not required to consider any fact "set out only in the brief" and not in the statement of facts. See LR 56.1B.(1), NDGa. Nor is the Court obligated to "scour the record" to determine whether triable issues exist. Tomasini v. Mt. Sinai Med. Ctr. of Fla., 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004). Nevertheless, the Court has reviewed the materials cited by Defendants to determine whether they support their assertions and has reviewed the record, including Plaintiff's

12

AO 72A
(Rev.8/8
2)

deposition and her filings, to determine whether there are genuine issues of material fact to be tried.

As discussed more fully below, Pollard's motion for summary judgment based on the failure to exhaust argument is analyzed as a motion to dismiss rather than as a motion for summary judgment, and the facts for purposes of that analysis are determined somewhat differently. In particular, the Court accepts Plaintiff's version of the facts as true at the initial step of the analysis, but at the next step makes "specific findings in order to resolve the disputed factual issues related to exhaustion." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008).

### B. <u>Facts Relevant to Defendant Pollard's Motion</u>[3]

When Plaintiff filed this action, she was an inmate at LASP,[4] which is owned and operated by the GDC. (Def. SMF, ¶ 1). Defendant Pollard was the Fire Chief of Banks County, Georgia from October 22, 2002 until February 28, 2009. (Def. SMF, ¶ 2).

At some point, Plaintiff became a member of the LASP inmate fire department. (Maloch Dep. at 52). The LASP fire department participated with Banks County and Habersham County in responding to fires. (<u>Id.</u> at 53). Pollard was the Chief of the Banks County Fire Department at that time, and Plaintiff saw

---

[3] Certain other facts relevant to the Court's consideration of the motion are discussed in the body of this Order.

[4] In 2000, Plaintiff was convicted of armed robbery and she has been serving a thirteen-year sentence at LASP ever since. (Def. SMF, ¶ 3).

AO 72A
(Rev.8/8
2)

him "on every fire call." (Id. at 52-53).[5] On one occasion, they were doing fire hose testing at a church, and Pollard took Plaintiff to the part of the church that had burned down and while they were there, he tried to kiss her; after she pushed him away, he "walked up to [her] and . . . was kissing on [her] neck." (Id. at 54-56). On two occasions at a later time, during triage training at the Fire Department administration building, Pollard asked or told Plaintiff to go with him, or followed her, to a supply room, and while they were there, he put his hands down her pants. (Id. at 58-63). In July 2008, Plaintiff and other LASP fire department inmates were sent to work on Station 410 of the Banks County Fire Department. (Def. SMF, ¶ 5). Plaintiff alleges that during that work detail, Pollard forced her to have sexual intercourse. (See Ex. A to Doc. 110; see also Maloch Dep. at 72-78).[6]

During her deposition, Plaintiff testified about the events leading up to the alleged rape. She testified that on that day, Pollard approached her while she was painting at Banks County Fire Station 410, where her LASP inmate firefighters detail had been assigned to help with renovations. (Maloch Dep. at 70-75). According to Plaintiff, the following events transpired: Pollard said, "[C]ome on, Dana and go with me. I said, well, where are we going? He said we got to go get some supplies and some paint and take down some shelves. I said I can't go with you by myself. He said I already had it approved for you to go with me. I said,

---

[5] The LASP fire department also participated with the City of Baldwin in responding to fires, but Pollard did not show up for those fires. (Maloch Dep. at 53-54).

[6] Exhibit A is a copy of a written statement Plaintiff provided to the GDC on December 14, 2008.

AO 72A
(Rev.8/8
2)

well, I can't go with you by myself. He said it's okay, I done had it approved." (Id. at 74). When she "walked outside . . . Laurie Green, Leslie Green, and Mr. Smith, and Chief Maher was [sic] all standing there watching me get in the vehicle with him, so I thought it was okay." (Id. at 75).[7] When asked during her deposition why she went with Pollard, Plaintiff responded, "Because I was told to. I'm used to doing what I'm told to do. I'm in prison." (Id. at 80). She acknowledged that when she got in the vehicle with Pollard at Station 410, there were other people around and she could have walked away from Pollard when he asked her to go with him. (Id. at 90). In response to the question, "When [Pollard] took you to the truck, did he grab you, did he force you?" Plaintiff testified, "No. I went on my own. The only thing I didn't want to do was the rape. That was the only thing I did unwillingly." (Id. at 200-01).

Plaintiff first reported the alleged rape to GDC personnel on November 5, 2008, and GDC's Internal Investigations Unit began an investigation of Plaintiff's allegations. (See Def. SMF, ¶ 13; Exs. 15-19 to Maloch Dep.). Plaintiff filed an Informal Grievance on January 15, 2009. (Def. SMF, ¶ 14; see also Ex. 47 to Maloch Dep.). In that grievance, Plaintiff indicated that the date of incident was July 2008, and she wrote:

---

[7] Mr. Smith was an LASP official, the LASP firefighters' "CO supervisor that day." (Maloch Dep. at 71). Earlier that day, when Pollard had come by the prison to take some of the inmates with him to the fire station, Mr. Smith would not allow it. (Id. at 73-74). Jessica Maher was the LASP fire department chief. (Id. at 167).

AO 72A
(Rev.8/8
2)

> Chief Gary [P]ollard took me to the old [B]anks [C]o. jail and forced me to have sex with him. I'm filing this grievance as a[n] out of time one on the account I didn't think I had the right. Chief Gary [P]ollard said no one would believe me because he was the fire chief and I was a[n] inmate. I thought Grievances were only for staff. [M]y lawyer informed me otherwise.

(Ex. 47 to Maloch Dep.). Plaintiff did not indicate what resolution she was seeking. (Id.).

On January 20, 2009, Sheila Bracewell, Acting Deputy Warden of Care & Treatment, sent Plaintiff a memorandum concerning her "Informal Grievance Form dated January 15, 2009." (Ex. 48 to Maloch Dep.). Bracewell wrote, "In accordance with SOP IIB05-0001, Statewide Grievance Procedure, the above referenced grievance is rejected for the following reason(s): . . . Other: <u>This issue has already been forwarded to the Internal Investigations Unit.</u>" (Id. (emphasis in original)). Although one of the possible reasons listed on the form memorandum for rejecting the grievance was "Grievance filed out of time frames as outlined in policy," that reason was not checked. (Id.). Plaintiff received the memorandum in response to her informal grievance. (Maloch Dep. at 223).

### C. <u>Exhaustion of Administrative Remedies</u>

Pollard argues that because Plaintiff did not exhaust her administrative remedies with the GDC before filing this § 1983 action as required by the PLRA,

16

her complaint against him must be dismissed. (See Doc. 98, Def. Br. at 13).[8]

Specifically, Pollard argues that Plaintiff's grievance filed on January 15, 2009 was untimely because she failed to file the grievance within 10 days[9] as required by the GDC grievance policy, and "there is no evidence that GDC actually waived the untimeliness of the grievance." (Id. at 15-18).

### 1. Standards Applicable to PLRA's Exhaustion Requirement

The PLRA provides as follows: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Therefore, 'when a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.' " Bryant v. Rich, 530 F.3d 1368, 1372-73 (11th Cir.) (quoting Johnson v. Meadows,

---

[8] Exhaustion of administrative remedies is not required with respect to § 1983 claims not covered by the PLRA. See Beaulieu v. City of Alabaster, 454 F.3d 1219, 1226-27 (11th Cir. 2006) (explaining that "[t]he Supreme Court and this Court have held that there is no requirement that a plaintiff exhaust his administrative remedies before filing suit under § 1983"), cert. denied, 549 U.S. 1340 (2007); see also Jones v. Bock, 549 U.S. 199, 212 (2007) (explaining that "claims covered by the PLRA are typically brought under 42 U.S.C. § 1983, which does not require exhaustion at all"). No party in this case has addressed whether the PLRA's exhaustion requirement is applicable to Plaintiff's § 1983 claim against Defendant Pollard, who was not a GDC employee or official. Rather, the parties simply assume that it is. The Court therefore assumes for purposes of deciding Pollard's motion that the PLRA applies.

[9] Defendant Pollard incorrectly asserts that the informal grievance must be filed within five (5) days of the complained of event (Doc. 98, Def. Br. at 15), but the GDC's policy at issue, SOP IIB05-0001 (see Attach. 1 to Fields Decl., Ex. C to Doc. 98), requires the inmate to file the informal grievance "no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. at VI.B.5.

AO 72A
(Rev.8/8
2)

418 F.3d 1152, 1156 (11th Cir. 2005), <u>cert. denied</u>, 548 U.S. 925 (2006)), <u>cert denied</u>, 129 S. Ct. 733 (2008). The purpose of the exhaustion requirement is to "allow[] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007).

The PLRA's exhaustion requirement applies regardless of the nature of the prisoner's complaint about his or her prison conditions and no matter what relief she seeks. <u>Johnson</u>, 418 F.3d at 1155 (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001)) ("The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' This provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.' "); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) ("[A] prisoner must . . . exhaust administrative remedies even where the relief sought--monetary damages--cannot be granted by the administrative process."). Furthermore, there is no futility exception to this exhaustion requirement. <u>See</u> <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325 (11th Cir. 1998) (stating that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA"). Moreover, "the PLRA exhaustion requirement requires **proper** exhaustion," i.e., the inmate must comply with the prison's procedural requirements for filing and appealing a

AO 72A
(Rev.8/8
2)

grievance, including deadlines, in order to exhaust her administrative remedies. <u>Woodford</u>, 548 U.S. at 83, 90-91, 93 (emphasis added).

A prisoner is not required "to specially plead or demonstrate exhaustion in [her] complaint[]" but rather the "failure to exhaust is an affirmative defense under the PLRA." <u>Jones</u>, 549 U.S. at 216. In <u>Bryant</u>, the Eleventh Circuit explained that the defense of failure to exhaust under the PLRA is a matter to be decided on motion to dismiss rather than on motion for summary judgment: "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a[n unenumerated Fed. R. Civ. P. 12(b)] motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" <u>Bryant</u>, 530 F.3d at 1374-75 (quoting <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368-69 (9th Cir. 1988)).[10] The court also explained that "[w]hen a court treats a motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion," such as motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and ineffective service of process, all of which allow the court to make factual findings as necessary. <u>Id.</u> at 1376 (quotation omitted). The court further explained

---

[10] Courts are divided on the issue of whether an exhaustion defense should be raised in a motion to dismiss or a motion for summary judgment. <u>See</u> <u>Dillon v. Rogers</u>, 596 F.3d 260, 271 (5th Cir. 2010) (discussing the split of opinion and citing cases).

AO 72A
(Rev.8/8
2)

that "[w]here exhaustion -- like jurisdiction, venue, and service of process -- is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. The court's rationale was that "[r]equiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress' intent in enacting the PLRA's exhaustion requirement: that is, to 'reduce the quantity and improve the quality of prisoner suits.'" Id. at 1376-77 (quoting Porter, 534 U.S. at 524).

In Turner, decided after Bryant, the court described the "two-step process" for deciding motions to dismiss for failure to exhaust administrative remedies under the PLRA:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

541 F.3d at 1082 (citations omitted). When the second step is necessary, "[o]nce the court makes findings on the disputed issues of fact, it then decides whether

AO 72A
(Rev.8/8
2)

under those findings the prisoner has exhausted [her] available administrative remedies." Id. at 1083. The defendant "bear[s] the burden of proving that the plaintiff has failed to exhaust [her] available administrative remedies." Id. at 1082.

### 2. The GDC Grievance Procedure

It is undisputed that the GDC's Standard Operating Procedure ("SOP") IIB05-0001 (see Attach. 1 to Fields Decl., Ex. C to Doc. 98) controlled the filing of inmate grievances during the time period relevant to this action. The three-step grievance procedure for the exhaustion of an inmate's administrative remedies as set forth in that SOP is described by the court in Faircloth v. Ferrell, No. CV511-016, 2011 U.S. Dist. LEXIS 151316, at *4-5 (S.D. Ga. Dec. 8, 2011) as follows:

> First, an inmate must file an informal grievance "no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." [(See Attach. 1 to Fields Decl., Ex. C to Doc. 98 ¶ VI.B.5)]. An inmate is to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. [(See id. ¶ VI.B.12)]. If the inmate is dissatisfied with the resolution of his informal grievance, he is to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. [(See id. ¶ VI.C.2)]. Once an inmate receives the Warden's response to his formal grievance and is dissatisfied with that response, he has five (5) business days to file an appeal with the Commissioner. [(See id. ¶ VI.D.2)]. The Commissioner's Office has 90 calendar days after receipt of the appeal to respond. [(See id. ¶ VI.D.5)].

### 3. Analysis

In her amended complaint, Plaintiff alleges in relevant part:

21

The provisions of the [PLRA] relating to exhaustion of administrative remedies have been satisfied by plaintiff filing and pursuing an out-of-time informal grievance which was accepted by Lee Arrendale State Prison where she was at all time[s] relevant incarcerated and she was prevented from filing a formal grievance because she was not given a formal grievance form which is necessary to file a formal grievance.

(Doc. 56, Am. Compl. ¶ 5). She also alleges that her informal grievance "was accepted out of time and [she was] informed that the grievance was sent to Internal Affairs for investigation," but "[s]he received no reply to her informal grievance and was not given a formal grievance." (Id. at ¶ 10). In his answer, Defendant Pollard denies paragraph 5 of Plaintiff's amended complaint and asserts that he is "without sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 10." (Doc. 61, Pollard Ans. ¶¶ 5, 10).

In Pollard's motion for summary judgment, treated as a motion to dismiss pursuant to the court's instruction in Bryant, 530 F.3d at 1374-75, Pollard acknowledges that Plaintiff "admits in her amended complaint that she did not file a timely grievance, but alleges that her untimely grievance was accepted by GDC or [LASP] and investigated." (Doc. 98, Def. Br. at 16). Pollard argues, however, that Plaintiff's allegation that the GDC investigated the grievance by sending it to the Internal Investigations Unit is unsupported because "this investigation was independent of Maloch's grievance and was actually begun well before Maloch filed a grievance" and "[i]t was not the grievance that was investigated, but the prior complaint." (Id.). Pollard concedes that the GDC grievance policy provides that the

GDC may waive the untimeliness of a grievance for good cause,[11] but contends that "there is no evidence that GDC actually waived the untimeliness of the grievance." (Id. at 16-18). In his reply brief, Pollard contends that the GDC did not "act[ ] upon" Plaintiff's untimely grievance but instead informed her that the issue had "already been forwarded to the Internal Investigations Unit." (Doc. 112, Def. Reply at 7).

At the first step of the analysis as described in Turner, the Court must consider the parties' allegations, and taking Plaintiff's allegations as true, determine whether Defendant Pollard "is entitled to have the complaint dismissed for failure to exhaust administrative remedies." 541 F.3d at 1082. The Court finds that, when Plaintiff's allegations are assumed to be true, Defendant Pollard has not shown that he is entitled to dismissal on the ground that Plaintiff failed to exhaust her administrative remedies. Plaintiff alleges that she filed an out-of-time informal appeal that was accepted by LASP and sent to Internal Affairs for investigation, and that she was not allowed to file a formal appeal because she received no reply to her informal grievance and she was not provided a formal grievance form. (Doc. 56, Am. Compl. ¶¶ 5, 10; Doc. 110, Pl. Br. at 5-6).[12] If true, those allegations are

_____

[11] Defendant Pollard cites to sections VI.C.2 and VI.D.2 of SOP IIB05-0001 in support of his assertion that "[t]he GDC grievance policy provides that GDC may waive the untimeliness of a grievance" (Doc. 98, Def. Br. at 16-17), but those sections refer to the filing of a formal grievance and the appeal of a formal grievance. Nevertheless, at least one other court that has considered the GDC's grievance policy has found that it allows the GDC to consider out-of-time informal grievances for good cause. See, e.g., Moore v. Washington, No. 4:10-CV-91-CDL-MSH, 2011 U.S. Dist. LEXIS 80891, at *12 (M.D. Ga. May 12, 2011) ("If the informal grievance was filed out of time, the inmate is allowed to state why, and the grievances filed out of time are reviewed for good cause."), adopted by 2011 U.S. Dist. LEXIS 80931 (M.D. Ga. July 22, 2011).

[12] In her deposition, Plaintiff testified that she was not allowed to file a formal grievance. (Maloch Dep. at 223-34).

23

AO 72A
(Rev.8/8
2)

sufficient to show that she exhausted her administrative remedies. See Graham v. Henderson, 315 F. App'x 849, 850 (11th Cir. 2009) (per curiam) (finding that the inmate had exhausted his administrative remedies because the defendants never responded to his informal grievance and did not give him a formal grievance form); cf. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (finding that inmate had not exhausted his administrative remedies because his grievance was untimely and he had not sought leave to file an out-of-time grievance).

Because Plaintiff's complaint against Defendant Pollard is not subject to dismissal at the first step of the analysis, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion" and then, based on those findings, to "decide[] whether under those findings [Plaintiff] has exhausted [her] available administrative remedies." Turner, 541 F.3d at 1082-83. It is uncontroverted that Plaintiff filed her informal grievance well beyond the time limits required by the GDC grievance policy, but as noted, Defendant Pollard concedes that the GDC may waive the untimeliness of a grievance. It is further uncontroverted that Plaintiff indicated in her January 15, 2009 informal grievance that her grievance was being filed "out of time," and she set forth reasons for filing the grievance out of time (see Ex. 47 to Maloch Dep.), thus providing the opportunity for the GDC to waive the untimeliness of her grievance. Plaintiff thus adequately invoked the GDC's administrative process. Cf. Harper, 179 F.3d at 1312 (upholding dismissal of prisoner's complaint because he "[could not] be considered to have exhausted his administrative remedies" where his grievance was

24

denied because it was untimely and he did not seek leave to file an out-of-time grievance despite grievance procedure provision allowing waiver of the time period for filing a grievance upon a showing of good cause).

What the parties dispute is whether Plaintiff's out-of-time grievance was accepted by the GDC despite its untimeliness, in other words, whether the GDC waived the time period for filing a grievance. If the GDC did waive the untimeliness of Plaintiff's grievance, then Plaintiff's allegation that she was not allowed to file a formal appeal because she received no reply to her informal grievance and she was not provided a formal grievance form, which Defendant Pollard has not rebutted by any evidentiary showing, leads to the conclusion, under <u>Graham</u>, that Plaintiff adequately exhausted her administrative remedies.

On the question whether the GDC waived the time deadline for Plaintiff to file her informal grievance and accepted her grievance, Defendant Pollard maintains that "there is no evidence that GDC actually waived the untimeliness of [Plaintiff's] grievance." (Doc. 98, Def. Br. at 18). The Court disagrees. Furthermore, bearing in mind that it is Defendant Pollard's burden to prove that Plaintiff failed to exhaust her administrative remedies, the Court finds that Defendant Pollard has not met that burden.

In the first place, there is evidence that the GDC did not deny Plaintiff's grievance on the ground that it was untimely, but instead "accepted" and considered the merits of that grievance. Contrary to Pollard's assertion that the

AO 72A
(Rev.8/8
2)

GDC did not "act[] upon" Plaintiff's untimely grievance (Doc. 112, Def. Reply at 7), by memorandum dated January 20, 2009, the GDC notified Plaintiff that her informal grievance had been rejected (Ex. 48 to Maloch Dep.). Therefore, the GDC did "act" upon the grievance; it rejected it. Moreover, the notice informed Plaintiff that her grievance had been rejected pursuant to SOP IIB05-0001 "for the following reason(s): . . . Other: <u>This issue has already been forwarded to the Internal Investigations Unit.</u> (<u>Id.</u> (emphasis in original)). Although one of the possible reasons listed on the memorandum for rejecting the grievance was "Grievance filed out of time frames as outlined in policy," that reason was not checked. (<u>Id.</u>). If the GDC did not find that Plaintiff had shown good cause for filing an out-of-time grievance as allowed by the GDC grievance policy, it could have, and according to Warden John Howerton should have, checked "filed out of time" as the reason for rejecting the grievance. (<u>See</u> Howerton Dep. at 76). In fact, the SOP states "When an inmate attempts to grieve an item that is not grievable according to this policy, is out of time, . . . or otherwise does not comply with the requirements of this procedure, it will be rejected, **noting the specific reason for this action**." (Attach. 1 to Fields Decl., Ex. C to Doc. 98 ¶ VI.A.10 (emphasis added)). Instead, the GDC left that reason, i.e., untimeliness, unchecked; considered the substance of Plaintiff's grievance; determined that it concerned an issue already under investigation by the Internal Investigations Unit; and "rejected" the grievance on that basis.

26

Furthermore, when Warden Howerton was asked during his deposition whether he accepted an out-of-time grievance submitted by Plaintiff, he responded, "Yes." (Howerton Dep. at 71). He then gave somewhat equivocal testimony on the question whether the GDC waived the untimeliness of the grievance. When asked whether he had "the authority to waive" the untimeliness of her grievance, he stated, "I don't know that we waived it. I think we probably processed it just like we would any other grievance out of time . . . . We processed it. We probably found it out of time and processed it and closed it out." (Id. at 75).

In light of (1) the GDC's January 20, 2009 notice indicating that Plaintiff's grievance was rejected not because it was untimely but because the matter was already being investigated by the Internal Investigations Unit, and (2) Howerton's testimony that the GDC accepted the out-of-time grievance and processed it, the Court finds that Defendant Pollard has not carried his "burden of proving that the plaintiff has failed to exhaust [her] available administrative remedies," Turner, 541 F.3d at 1082, based on the untimeliness of her informal grievance. Thus, for purposes of Defendant Pollard's motion, the Court finds that the GDC waived the time period for Plaintiff to file her informal grievance.

The Court notes that Plaintiff also alleges "she was not notified of any adverse action on her informal grievance[13] or presented with a formal grievance that must be furnished by the prison officials" in cases of physical abuse or excessive force

---

[13] Plaintiff admitted that she received the January 20, 2009 notice rejecting her grievance (Maloch Dep. at 223), so it is unclear what notice Plaintiff contends she did not receive.

AO 72A
(Rev.8/8
2)

(Doc. 110, Pl. Br. at 6, 11), apparently to excuse her failure to pursue the grievance process after filing her informal grievance.[14] Defendant Pollard has not argued that Plaintiff failed to exhaust her administrative remedies because she failed to take any action after filing her informal grievance, nor has he responded to Plaintiff's explanation of the reasons for her inaction. Pollard's sole arguments in support of his contention that Plaintiff failed to exhaust administrative remedies are that she

---

[14] Plaintiff cites SOP IIB05-0001, Attachment 9 in support of her assertion that prison officials were required to give her a formal grievance form because she alleged physical abuse. (Doc. 110, Pl. Br. at 11). The parties have not provided that policy to the Court, however. The Court notes that in Graham, a case cited by Plaintiff, the Eleventh Circuit considered that policy and held that the district court erred by dismissing the plaintiff's complaint for failure to exhaust administrative remedies under the PLRA. 315 F. App'x at 850.

> [The plaintiff had] filed an informal grievance, but Defendants never responded and never gave Plaintiff a formal grievance form, despite the fact that SOP IIB05-0001, Attachment 9, III(A)(1), states as follows:
>
> Any informal grievance that alleges physical abuse or excessive force by staff is to be forwarded to the Grievance Coordinator by the Counselor within 2 business days of receipt. The Grievance Coordinator will ensure that the inmate is promptly issued a grievance form to formally address the allegation in this format if the inmate wishes to do so.

Id. Thus, the court found that the plaintiff, who alleged physical abuse, had adequately exhausted his administrative remedies. Id. The court explained:

> When an informal grievance alleges "physical abuse," as Plaintiff's informal grievance did, it should be forwarded to the Grievance Coordinator by the Counselor within two business days of receipt, and the Grievance Coordinator should ensure that the inmate is promptly issued a formal grievance form to address the allegation of physical abuse if the inmate wishes to do so. We reject Defendants' argument that after an inmate has filed an informal grievance, the Grievance Coordinator has to do nothing until the inmate comes forward and says he wants to file a formal grievance form. The SOP places the burden on the Counselor to forward the informal grievance to the Grievance Coordinator. Thereafter, the Grievance Coordinator is obligated to ensure that the inmate is promptly issued a "formal grievance form" in order that the investigation can move forward. Here, the Defendants made no response whatsoever to Plaintiff's informal grievance, the informal grievance was not transmitted to the Grievance Coordinator within two business days, and neither the Counselor nor the Grievance Coordinator met with the inmate or provided any forms as required.

Id.

AO 72A
(Rev.8/8
2)

did not timely file her informal grievance and there is no evidence the GDC waived the deadline for filing the grievance. (See Doc. 98, Def. Br. at 13-18; Doc. 112, Def. Reply at 5-8). The Court therefore has confined its analysis of the exhaustion issue to those arguments and finds that Defendant Pollard has not met his burden of proving that Plaintiff failed to exhaust her administrative remedies. Accordingly, Defendant Pollard's motion for summary judgment on the ground of failure to exhaust administrative remedies, treated as a motion to dismiss pursuant to Bryant, is **DENIED**.[15]

### D. **Action Under Color of State Law**

#### 1. **Arguments of the Parties**

While Defendant Pollard denies that Plaintiff was assaulted or abused, he argues that "none of his actions that she alleges, even if they had occurred, were under color of state law," a required element of a § 1983 claim. (Doc. 98, Def. Br. at 11); see also Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) ("To state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived [her] of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law."). Pollard contends that "the under-color-of-state-law element of § 1983 excludes from its reach merely private

---

[15] The Court also finds that even if the procedure outlined in Turner for resolving defensive motions alleging failure-to-exhaust under the PLRA were not applied and Defendant Pollard's motion were treated as a motion for summary judgment, his motion is due to be denied. There are genuine issues of material fact on whether the GDC waived the untimeliness of Plaintiff's informal grievance and accepted the grievance for consideration of its merits.

conduct" and that "several . . . federal courts have held that state or local government employees did not act under color of state law in circumstances similar to those in the present case." (Doc. 98, Def. Br. at 6 (internal quotation marks omitted)). In support of his argument, he cites numerous out of circuit cases and some cases from the Eleventh Circuit, including <u>Almand v. DeKalb County, Ga.</u>, 103 F.3d 1510 (11th Cir. 1997).[16]

The gist of Pollard's argument is that his alleged actions were not taken under color of law because he lacked "supervisory authority or control over [Plaintiff] and he did not direct or command her to accompany him to obtain supplies for the work project on the day of the alleged rape or at any other time." (Doc. 98, Def. Br. at 11-12). He points out that the sexual assault indictment against him in the Banks County Superior Court "was dismissed because, among other reasons, the court held as a matter of law that Pollard did not have 'supervisory or disciplinary authority' over [Plaintiff] as required by O.C.G.A. § 16-6-5.1."[17] (<u>Id.</u>; <u>see also</u> Ex. B to Doc. 98, May 5, 2010 Order of Banks County Superior Court). Pollard contends that because he lacked supervisory or disciplinary authority over Plaintiff, and because that authority at all times resided exclusively with the GDC security

---

[16] Defendant Pollard cites, among other cases, <u>Townsend v. Moya</u>, 291 F.3d 859 (5th Cir. 2002); <u>Honaker v. Smith</u>, 256 F.3d 477 (7th Cir. 2001); <u>Jojola v. Chavez</u>, 55 F.3d 488 (10th Cir. 1995); <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137 (3rd Cir.), <u>cert. denied</u>, 516 U.S. 858 (1995); and <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809 (3d Cir. 1994). (Doc. 98, Def. Br. at 7-10).

[17] That code section criminalizes sexual assault by persons with supervisory or disciplinary authority over the victim.

AO 72A
(Rev.8/8
2)

personnel at the scene, he cannot be liable to her under § 1983. (Doc. 98, Def. Br. at 12-13; see also Ex. A. to Doc. 98, Declaration of Gary Pollard ¶¶ 3, 5).

Plaintiff responds to Defendant Pollard's arguments as follows:

> Pollard was a state actor using his supervisory authority both as Fire Chief of Banks County as well as his authority directing [Plaintiff's] detail duties to lure [her] into the isolated situation where he could demand sexual relations with the incarcerated Plaintiff. Defendant Pollard certainly supervised Plaintiff and the other female inmate firefighters during training including triage training several weeks before when he attempted to kiss her, he supervised them during actual fires and he was supervising them during the repair and painting of the fire station on the date of the rape incident.
>
> The dual role of county supervision of inmates often occurs when inmates are assigned to work detail performing maintenance on county projects such as maintenance [of] county roads, buildings and golf courses. In such cases the supervisors exercise supervision over the inmates performing labor and they exercise supervision as supervisor agents of the county. In both roles the county supervisors are acting as state actors exercising supervision of inmate labor while on work details.

(Doc. 110, Pl. Br. at 4-5). Plaintiff distinguishes the cases cited by Pollard as involving "sexual abuse situations where the sexual abuse was not committed in the performance of an actual duty but [was] performed during personal pursuits." (Id. at 5). Plaintiff contends that here, on the other hand, "Pollard was on duty as a state actor as Chief of the Banks County Fire Department and as the supervisor of the Plaintiff and other inmates of the Lee Arrendale Fire Department working on a prison detail for the Banks County Fire Department." (Id.).

31

## 2. __Applicable Law__

The Eleventh Circuit has set out the basic paradigm for the color-of-state-law

analysis that controls here, as follows:

> A person acts under color of state law when he acts with authority
> possessed by virtue of his employment with the state. The dispositive
> issue is whether the official was acting pursuant to the power he . . .
> possessed by state authority or acting only as a private individual. It
> is firmly established that a defendant in a § 1983 suit acts under color
> of law when he abuses the position given to him by the State.

Griffin, 261 F.3d at 1303 (citations and quotation marks omitted). In Griffin, the

Eleventh Circuit rejected the defendant city's argument that a city manager was not

acting under color of state law when he engaged in ongoing sexual harassment of

one of the city's employees and eventually raped her in her own apartment. Id. at

1298-1300, 1303. The court concluded from "the totality of facts and

circumstances" that there was "evidence from which a reasonable jury could

conclude that [the manager's] actions in harassing and ultimately raping [the

victim] occurred while he was acting under color of law." Id. at 1303. The court

explained that the manager "utilized his authority as City Manager to facilitate the

assault on [the victim] and that he was therefore acting under color of law at the

time of the assault." Id. at 1305. In particular, the court noted that even though

the rape did not occur on city property, the "evidence support[ed] the conclusion"

that defendant "invoked his authority as City Manager to create the opportunity to

be alone with [the victim], to take her home, and then to rape her." Id. at 1304.

AO 72A
(Rev.8/8
2)

The court also made clear in <u>Griffin</u> that there is a "critical distinction in the color of law analysis between those cases where a state actor directly uses his official authority to create the opportunity to sexually assault a victim," in which case the action was "under color of law," and "those cases where a state actor merely uses his authority to develop or facilitate a relationship of trust with a victim, even though that relationship in some attenuated sense serves as a but for cause of a later sexual assault," in which case the action was not "under color of law." <u>Id.</u> at 1306, 1307 n.12. The court distinguished several cases, including <u>Almand</u>, "where the performance of a state actor's official duties merely facilitated the meeting of or development of a relationship between the state actor and another person; and the state actor later, on his own time and wholly independent of his official duties, commit[ed] an assault or other constitutional tort against that person." <u>Id.</u> at 1306. The court explained that in <u>Almand</u>, "although [the] victim became acquainted with [the] police officer through his official duties in investigating [the] victim's daughter's disappearance, defendant used sheer force, not **his authority as a police officer**, to bust through her front door and rape her." <u>Id.</u> (emphasis added); <u>see also</u> <u>id.</u> at 1303 (noting that in <u>Dang Vang v. Toyed</u>, 944 F.2d 476, 479-80 (9th Cir. 1991), the Ninth Circuit upheld a "jury determination that defendant acted under color of law when he raped women looking for employment while meeting with them under pretext of providing services pursuant to his job").

33

AO 72A
(Rev.8/8
2)

### 3.  **Analysis**

The Court finds that <u>Almand</u> is similarly distinguishable from this case, that the other cases cited by Pollard in support of his contention that any actions he took against Plaintiff were not taken under color of law are also distinguishable, and that <u>Griffin</u> controls.  It is noteworthy that many of the cases cited by Pollard also point out that a state employee may act under color of state law in pursuing his own personal ends, rather than those of his employer, if his action "involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>Honaker</u>, 256 F.3d at 484 (quotation marks omitted); <u>see also</u> <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (citing <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941))).  In the present case, unlike the cases cited by Pollard, there is evidence from which reasonable jurors could find that Pollard used the cloak of his authority as Chief of the Banks County Fire Department to isolate Plaintiff, during a prison work detail, in a location where he could carry out a sexual assault of Plaintiff.  Reasonable jurors could find that like the city manager in <u>Griffin</u>, Pollard used the authority of his official position to "facilitate the assault on [Plaintiff] and that he was therefore acting under color of law at the time of the assault." 261 F.3d at 1305.

34

In his reply brief, Pollard attempts to distinguish the circumstances in <u>Griffin</u> from those here. (Doc. 112, Def. Reply at 3-5). Pollard argues that <u>Griffin</u> is "[o]bviously . . . a different case from the present one" because the city manager in <u>Griffin</u> supervised the rape victim, whereas "Pollard was not [Plaintiff's] supervisor" and under Georgia law "had no authority over her at all" and "he did not force, coerce, or threaten her." (<u>Id.</u> at 4). Pollard asserts that Plaintiff has admitted that she "could have walked away" and refused Pollard's request to accompany him in his vehicle. (<u>Id.</u>; <u>see also</u> Maloch Dep. at 90). He argues that his conduct "was not 'the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.'" (Doc. 112, Def. Reply at 4 (quoting <u>Lugar v. Edmondson Oil, Co.</u>, 457 U.S. 922, 937 (1982))).

Whether or not Pollard had the actual authority to order Plaintiff to accompany him alone to retrieve supplies, or whether he had actual supervisory authority over Plaintiff, or whether he forced or coerced her to accompany him or she instead was willing to go with him, are not dispositive of the color of law question, however. Rather, the question is whether it was by virtue of his position as Banks County Fire Chief that Pollard was able to gain sole custodial oversight of Plaintiff while she was on a prison detail so as to create the opportunity to take her to a remote location and sexually assault her. According to Plaintiff's testimony, although inmates were not supposed to go anywhere alone with "them," including Pollard, she was told by Pollard that he had received approval for her to accompany him alone, and the "CO Supervisor of the day," Benny Smith, saw her

35

get into the vehicle with Pollard, so she thought it was okay. Reasonable jurors could find that the LASP officer supervising the inmates who were part of the LASP fire department would not allow Plaintiff, an inmate, to leave that officer's supervision with a person who did not have custodial authority over the inmate; that, when Pollard purportedly asked for approval to take Plaintiff with him to get supplies, he was given that authority because he was the Banks County Fire Chief; and that once Plaintiff was in his custody, Pollard took advantage of his authority over her to take her to a secluded place where he could assault her. Thus, viewing the evidence in the light most favorable to Plaintiff, the non-movant, the Court finds that there is a genuine issue of fact for trial as to whether Pollard misused his position of authority as Banks County Fire Chief "to create the opportunity for or to facilitate a sexual assault," Griffin, 261 F.3d at 1305, i.e., whether he "used the cloak of his authority as . . . fire chief," Honaker, 256 F.3d at 485, to facilitate the alleged assault. See also Jojola, 55 F.3d at 493 (explaining that "[t]he authority with which the defendant [in a § 1983 action] is allegedly 'clothed' may be either actual or apparent"); Barna, 42 F.3d at 816 (explaining that "one who is without actual authority, but who purports to act according to official power, may also act under color of state law").[18]

---

[18] Pollard's reliance on the dismissal of the criminal indictment against him—based on the state court's finding that he lacked "supervisory or disciplinary authority" over Plaintiff as required to sustain a criminal action under O.C.G.A. § 16-6-5.1—is misplaced. (See Doc. 98, Def. Br. at 12). The foregoing discussion demonstrates that the color-of-state-law requirement under 42 U.S.C. § 1983 does not include a requirement that the state employee who allegedly abused his state-created authority did so with respect to someone over whom he had actual supervisory or disciplinary authority. As the Eleventh Circuit stated in Griffin, "a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State." 261 F.3d at 1303 (citing

AO 72A
(Rev.8/8
2)

Because there are triable issues of fact on whether Pollard acted under color of state law, Defendant Pollard's motion for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim is **DENIED**.

## V.     State Law Claims

Finally, "Pollard urges this federal Court to decline jurisdiction over any state tort law claim," as yet unspecified by Plaintiff, and to dismiss any such claim without prejudice. (Doc. 98, Def. Br. at 18-19). Because the Court finds that Defendant Pollard is not entitled to summary judgment on Plaintiff's § 1983 claim, Pollard's request that the Court decline to exercise its supplemental jurisdiction over Plaintiff's state law claims is **DENIED**.[19]

Accordingly, Defendant Pollard's motion for summary judgment on Plaintiff's state law claims is **DENIED**.

---

Classic, 313 U.S. at 326). Here, there is evidence from which reasonable jurors could find that Pollard abused his position as Fire Chief to gain custodial control over Plaintiff. The Court notes further that Plaintiff apparently viewed Pollard as having custodial authority over her. She testified that if she had tried to get away from Pollard during the sexual assault at the old Banks County Jail, she could have been charged with escape: "If I took off running when nobody was around, that's an escape charge." (Maloch Dep. at 101).

[19] Defendant Pollard also argues that "Plaintiff['s] claims under the Georgia Constitution are subject to adverse summary judgment" because, among other reasons, "[t]here is no Georgia analogue that allows suits for damages for violations of the Georgia Constitution." (Doc. 98, Def. Br. at 4-5). Plaintiff did not respond to Pollard's argument. In her amended complaint, Plaintiff allegedly brings her § 1983 claim (Count I) for "violation[s] of the Constitution and the laws of the United States and the Constitution and laws of the State of Georgia." (Doc. 56, Am. Compl. ¶ 12). It does not appear that Plaintiff asserts a freestanding claim pursuant to the Georgia Constitution. However, to the extent that she relies on alleged violations under Georgia law, including the Georgia Constitution, to support her § 1983 claim, that reliance is misplaced and any such claim is **dismissed**. See Williams v. Martin, No. 1:06-cv-2161-WSD, 2007 U.S. Dist. LEXIS 19114, at *4 (N.D. Ga. Mar. 19, 2007) (explaining that "[t]he Georgia [C]onstitution and laws are . . . outside of the scope of § 1983," and "Georgia law itself cannot give rise to a § 1983 claim").

AO 72A
(Rev.8/8
2)

## VI.    Defendants' Other Motions [Docs. 91, 121]

In light of the Court's Order granting summary judgment to Defendants Hart, Barefoot and Cain, the motion to dismiss filed by Hart and Barefoot [Doc. 91] and Defendants' request for ruling [Doc. 121] are **DENIED as moot**.

## VII.    Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants Hart, Barefoot and Cain [Doc. 95] is **GRANTED**; the motion for summary judgment filed by Defendant Pollard [Doc. 98] is **DENIED**; and Defendants' motion to dismiss [Doc. 91] and request for ruling [Doc. 121] are **DENIED as moot**.

The remaining parties shall submit a proposed consolidated pretrial order within 30 days of the entry of this Order.

**SO ORDERED**, this   7th   day of March, 2012.


**RICHARD W. STORY**
United States District Judge

38